1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

**\* \* \***

| | |
|---|---|
| ZUFFA, LLC, a Nevada limited liability company, dba ULTIMATE FIGHTING CHAMPIONSHIP, ) ) ) ) | Case No.: 2:10-cv-01427-RLH-RJJ |
| Plaintiff, ) ) | **O R D E R** |
| vs. ) ) | (Motion to Dismiss–#8) |
| PAVIA HOLDINGS, LLC, a California limited ) liability company, dba MMA AGENTS; ) BELLATOR SPORT WORLDWIDE, LLC, a ) Delaware limited liability company; DOES 1 ) through 100, inclusive; ROE Corporations and ) Limited Liability Companies 1 through 100, ) inclusive, ) ) | |
| Defendants. ) ) | |

Before the Court is Defendant Bellator Sport Worldwide, LLC's ("Bellator")
**Motion to Dismiss Plaintiff's Claims Against Defendant Bellator Sport Worldwide, LLC,
For Lack of Personal Jurisdiction** (#8), filed September 9, 2010.  The Court has also considered
Plaintiff Zuffa, LLC's Opposition (#13), filed September 27, 2010, and Bellator's Reply (#21),
filed October 20, 2010.

/

AO 72
(Rev. 8/82)

**BACKGROUND**

This dispute arises out of Zuffa's allegations that Bellator procured and utilized Zuffa's confidential and proprietary information.  Zuffa alleges the following facts in support of its claims.  Zuffa is a private company that promotes mixed martial arts ("MMA") contests under its Ultimate Fighting Championship ("UFC") brand name.  MMA contests involve bouts between fighters skilled in the various disciplines of martial arts including karate, jiu-jitsu, boxing, kick boxing, wrestling and others.  Bellator is also a private company that promotes MMA contests, and Defendant Pavia Holdings, LLC, is a sports management company that provides MMA fighters with legal assistance, fighting opportunities, sponsorships, and other services ("MMA Agents").  As agent to several UFC fighters, MMA Agents would have access to various agreements entered into between its clients and Zuffa.

On July 4, 2010, Bjorn Rebney, Bellator's founder and Chief Executive Officer, sent the following email to Ken Pavia, a sports agent that heads MMA Agents, with a courtesy copy to Tim Danaher, President of Bellator:

> Ken,
>
> Tim and I know that you've been great about sending us "All" of the seminal docs from the UFC, so that we can re-do them and implement them for Bellator.
>
> Can you please re-send emails with those attachments.  Literally list them 1– TBD.  Please list each in terms of what it is for and how the UFC uses them/implements them.
>
> Please also make sure they are attached and correspondingly listed.
>
> Then I'm going to have our team Monday re-type them and we will sufficiently alter them such that they will appear to be ours and not theirs.
>
> If you get this over to us late today, that would be great.
>
> Thanks,
>
> B

(Dkt. #13, Opp'n, Ex. 1, Williams Dec.)  Pavia replied to Rebney's email by stating: "Still I vegas.  May take 24 hours to organize as some forms go to the guys in my office."  (*Id*.)  Zuffa believes

AO 72
(Rev. 8/82)

1    that the documents Rebney was seeking include promotional agreements, bout agreements,

2    sponsorship forms, extension letters, injury forms, etc.  According to Zuffa, these are documents

3    that MMA Agents would have access to and that contain explicit confidentiality provisions.

4          Accordingly, on July 28, Zuffa filed suit in the Eighth Judicial District Court of the

5    State of Nevada against Bellator and MMA Agents, asserting the following claims: (1) violation of

6    the Nevada Uniform Trade Secrets Act, NRS § 600A.010, *et seq.*, (2) civil conspiracy, (3) breach

7    of contract, (4) breach of the implied covenant of good faith and fair dealing, (5) civil aiding and

8    abetting/inducement, (6) conversion, and (7) injunctive relief.  The case was then removed to this

9    Court on August 23.  On September 9, Bellator filed this motion to dismiss for lack of personal

10   jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  For the reasons

11   discussed below, the Court denies the motion.

**DISCUSSION**

12

13   **I.      Personal Jurisdiction Standard**

14         Rule 12(b)(2) provides that a court may dismiss a complaint for "lack of

15   jurisdiction over the person."  To establish personal jurisdiction over a nonresident defendant, the

16   plaintiff bears the burden of establishing that (1) the forum's long-arm statute confers personal

17   jurisdiction over the nonresident defendant, and (2) the exercise of jurisdiction satisfies the

18   constitutional principles of due process.  *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007,

19   1019 (9th Cir. 2002).  Because Nevada's long-arm statute permits the exercise of jurisdiction to

20   the same extent as the United States Constitution, the personal jurisdiction analysis collapses into a

21   single analysis of whether the exercise of jurisdiction over the nonresident defendant comports

22   with due process.  NRS § 14.065.  Due process is satisfied if sufficient "minimum contacts" exist

23   between the nonresident defendant and the forum so that maintenance of the suit does not offend

24   "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S.

25   310, 316 (1945).

26   /

### A.     Minimum Contacts

First, *International Shoe* requires that the nonresident defendant have such "minimum contacts" with the forum that the exercise of jurisdiction would be fair and reasonable. *Id*. at 316.  There are two distinct bases on which to establish sufficient minimum contacts—general and specific jurisdiction.

### 1.     General Jurisdiction

The exercise of general jurisdiction is appropriate when a defendant's activities in the forum are so "substantial" or "continuous and systematic," *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984), that the defendant should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Some of the factors that a court may consider in making this determination are "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Id*.  However, it is the "nature and extent of the contacts that determines whether they are 'substantial' or 'continuous and systematic,'" not a mechanical checklist.  *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006).  "Longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets are among the indicia of such a presence." *Id*.

Bellator is a Delaware limited liability company with its principal place of business in Chicago, Illinois.  Bellator has no offices or property in Nevada, is not licensed in Nevada, and is not authorized to do business in Nevada.  The extent of Bellator's contacts with Nevada include (1) operating a website (www.bellator.com) accessible to Nevada residents, (2) entering into contracts with MMA fighters that live in Nevada, (3) attending an MMA Awards show in Nevada, and (4) soliciting contestants nationwide, including in Nevada, for its "Bellator Girls" contest via its website.

/

### a.     Bellator's Website

The mere existence of an interactive website is insufficient to establish general jurisdiction.  *Zuffa, LLC v. Showtime Networks, Inc.*, 2:07-cv-00369-RLH-PAL, 2007 U.S. Dist. LEXIS 60711, *19 (D. Nev. August 17, 2007).  Plaintiff must offer proof that the defendant is conducting continuous and systematic business with the forum through the website.  *Id*.  Bellator's website merely provides visitors with information regarding Bellator-sponsored MMA events, including a schedule of events, a link to purchase tickets, news, information on fighters, results of events, as well as videos and photos of events.  The website also allows visitors to sign up for the "Bellator Underground," a fan club that provides members breaking news, special access to merchandise discounts, and early ticket offers, among other things.  There is no evidence that visitors can purchase merchandise or tickets directly from the website.  Thus, although it is conceivable that Nevada residents may visit Bellator's website, Zuffa has not shown that the website alone is sufficiently interactive to establish that Bellator is conducting continuous and systematic business with Nevada.  Therefore, the Court finds that Bellator's website alone is insufficient to establish general jurisdiction.

### b.     Contracts with Nevada Residents

More relevant to the question of general jurisdiction is the fact that Bellator has entered into contracts with fighters who reside in Nevada.  At least six Nevada residents have contracted with Bellator to fight in Bellator sponsored events.  However, all of the Bellator events in which these fighters are obligated to fight will take place outside of the state of Nevada.  As such, these Nevada fighters will perform their contractual obligations outside of Nevada.  Furthermore, if a dispute arises under one of these contracts, the relevant provisions of the contracts designate New Jersey, or another state other than Nevada, as the proper choice of law and venue for the litigation.  Finally, Bellator claims that the fighters with whom they've contracted are independent contractors, and therefore not Bellator employees.  The Court is,

/

AO 72
(Rev. 8/82)

1   therefore, not persuaded that Bellator's contact with Nevada through these contracts is substantial
2   enough to permit general jurisdiction.

3   **c.      Other Contacts**

4   Zuffa further mentions the fact that Bjorn Rebney, Bellator's founder and Chief
5   Executive Officer, once attended an MMA awards show held in Las Vegas, Nevada.  In addition, it
6   also appears that one of the recently-crowned "Bellator Girls," winners of a contest put on by
7   Bellator, is a resident of Nevada.  These contacts are far too sporadic for the Court to consider
8   substantial, or continuous and systematic.  Furthermore, considering all of the foregoing "contacts"
9   alleged by Zuffa, the website, the contracts, the awards show, and the Bellator girls, Zuffa has
10  failed to meet its burden of showing that these contacts are sufficiently substantial or continuous
11  and systematic that it would be reasonable for Bellator to anticipate being sued in Nevada.  At
12  most, these contacts are collateral to the substantial business that Bellator is directing towards
13  many states other than Nevada.  Therefore, the Court finds that general jurisdiction does not exist
14  over Bellator.  Accordingly, in order to establish sufficient "minimum contacts" between Bellator
15  and Nevada, Zuffa must show that this Court has specific jurisdiction over Bellator.

16  **2.      Specific Jurisdiction**

17  The Ninth Circuit applies a three-part test to determine whether the exercise of
18  specific jurisdiction over a nonresident defendant is appropriate: "(1) the nonresident defendant
19  must purposefully direct his activities or consummate some transaction with the forum or residents
20  thereof; or perform some act by which he purposefully avails himself of the privilege of
21  conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the
22  claim must be one which arises out of or relates to the defendant's forum-related activities; and (3)
23  the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be
24  reasonable."  *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).

25  /
26  /

AO 72
(Rev. 8/82)

### a.  Purposeful Direction

Under the first prong of the specific jurisdiction test, a plaintiff must establish that a defendant either "purposefully availed" himself of the privilege of conducting business in the forum state or "purposefully directed" his activities toward the forum state. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  "A purposeful availment analysis is most often used in suits sounding in contract.  A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Id.* (citations omitted).  Because this dispute involves allegations of tortious activity, the Court will address only the purposeful direction analysis.  The Ninth Circuit evaluates purposeful direction using the *Calder* test, which examines whether the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Id.* at 803.

### i.  Intentional Act

To satisfy the "intentional act" requirement of the *Calder* test, it is sufficient to demonstrate that Bellator had "an intent to perform an actual, physical act in the real world rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806.  The Court finds that Bellator committed an intentional act because Mr. Rebney, Bellator's CEO, allegedly sent an e-mail to Ken Pavia, a sports agent that heads MMA Agents, wherein he requests Pavia to re-send all the "seminal" documents from UFC so that Bellator could alter them enough to use them in its business.  This alleged email is sufficient to establish an intentional act, and weighs toward purposeful direction under the *Calder* test.

### ii.  Expressly Aimed in the Forum State

The Ninth Circuit has held that the "express aiming" requirement of the *Calder* test is satisfied when "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters v. Augusta Nat'l*, 223 F.3d 1082, 1087 (9th Cir. 2000).  In this case, Bellator knew that its conduct was targeting Zuffa because the e-mail giving rise to Zuffa's alleged injuries shows that Bellator

7

1    was trying to appropriate all of the seminal documents used by UFC in conducting its business in

2    Nevada.  Therefore, because Bellator knew that Zuffa is based in Nevada, the Court finds that

3    Zuffa has met its burden in establishing the express aiming requirement.

4                              **iii.      Harm Suffered in the Forum State**

5                 With respect to "harm suffered in the forum state," the third requirement of the

6    *Calder* test, the Ninth Circuit has held that a corporate plaintiff feels harm where it maintains its

7    principal place of business.  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir.

8    1998).  Furthermore, "the 'brunt' of the harm need not be suffered in the forum state.  If a

9    jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that

10   even more harm might have been suffered in another state." *Yahoo! Inc. v. La Ligue Contre Le*

11   *Racisme*, 433 F.3d 1199, 1207 (9th Cir. 2006).  As discussed above, Zuffa is a Nevada limited

12   liability company that has its principal place of business in Nevada.  Thus, the alleged

13   misappropriation and use of Zuffa's confidential documents would certainly cause Zuffa harm in

14   Nevada.  Whether or not Zuffa suffers more harm in other states is irrelevant.  Therefore, the Court

15   finds that Zuffa has suffered harm in Nevada.

16                 Accordingly, the Court finds that Zuffa has shown that the three requirements of the

17   *Calder* test are satisfied.  Consequently, the first prong of the specific jurisdiction test—the

18   purposeful direction prong—is satisfied.  The Court will now address the second prong of the

19   specific jurisdiction test.

20                              **b.      "Arising out of"**

21                 Under the second prong of the specific jurisdiction test, a plaintiff must establish

22   that the claim it asserts arises out of or relates to the defendant's forum-related activities.  *Lake*,

23   817 F.2d at 1421.  The Ninth Circuit follows the "but for" test in its analysis of the "arising out of"

24   requirement.  *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1073 (9th Cir. 2001).  In this case,

25   Zuffa's alleged injuries resulted from Bellator's purported misappropriation of Zuffa's confidential

26   and proprietary information.  Thus, the Court can easily conclude that but for Bellator's conduct,

AO 72
(Rev. 8/82)

1    Zuffa would not have suffered its alleged injuries.  As such, the Court finds that Zuffa's claims

2    arise out of Bellator's alleged forum-related activities.

3              **c.    Reasonableness**

4              Under the third prong of the specific jurisdiction test, the defendant must "'present

5    a compelling case that the presence of some other considerations would render jurisdiction

6    unreasonable' in order to defeat personal jurisdiction." *Harris Rutsky & Co. Ins. Servs. v. Bell &*

7    *Clements, Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003) (citing *Burger King Corp. v. Rudzewicz*, 471

8    U.S. 462, 477 (1985)).  The Ninth Circuit examines the following seven factors when considering

9    the issue of reasonableness:

11          (1) the extent of a defendant's purposeful interjection; (2) the burden on the
            defendant in defending in the forum; (3) the extent of conflict with the sovereignty
12          of the defendant's state; (4) the forum state's interest in adjudicating the dispute;
            (5) the most efficient judicial resolution of the controversy; (6) the importance of
            the forum to the plaintiff's interest in convenient and effective relief; and (7) the
13          existence of an alternative forum.

14   *Kumarelas v. Kumarelas*, 16 F.Supp.2d 1249, 1255 (D. Nev. 1998).  "None of these factors is

15   necessarily decisive nor, we emphasize, are these factors a litany to be applied in each case.

16   Determining reasonableness is not an abstract exercise but must be approached with flexibility and

17   must focus on the circumstances of a given case." *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649

18   F.2d 1266, 1273 (9th Cir. 1981).  The Court will concentrate its analysis on the factors it finds

19   most applicable here.

20             **i.    Burden on Defendant**

21             The Ninth Circuit has held that "once minimum contacts have been established,

22   inconvenience to the defendant is more appropriately handled not as a challenge to jurisdiction, but

23   as a factor supporting a change in venue." *Id.* at 387.  "Moreover, this court must 'examine the

24   burden on the defendant in light of the corresponding burden on the plaintiff.'" *Id.* at 386 (quoting

25   *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988).  Bellator argues that it

26   would be substantially burdened by litigating in Nevada because it would be forced to travel

thousands of miles.  However, given the fact that Bellator, an Illinois business, regularly litigates contract disputes in New Jersey, it would not be a deprivation of due process to require them to litigate in Nevada.  Furthermore, it would be just as much of a burden on Zuffa to have to travel to either California or Illinois—the venues recommended by Bellator—as it is for Bellator to litigate in Nevada.  Bellator also argues that because the alleged conduct occurred in California and Illinois, and most of the witnesses and evidence are in California and Illinois, it would be a substantial burden to litigate in Nevada.  However, these are issues that are more appropriately raised as factors supporting a change in venue—not as factors challenging jurisdiction.  Accordingly, the Court finds that this factor also weighs in favor of the Court exercising jurisdiction.

### ii.      Conflict with Sovereignty of Defendant's State

This factor essentially involves an examination of whether a conflict of law exists between the forum state and the defendant's state.  *See Panavision*, 141 F.3d at 1323.  Bellator is a Delaware limited liability company with its principal place of business in Illinois.  Bellator argues that a conflict exists with Illinois because Illinois has an interest in adjudicating claims against businesses operating within its borders.  However, this is not a conflict of law.  In fact, the only conflict of law that Bellator asserts is a conflict between Nevada law and New Jersey law.  Yet, New Jersey is not Bellator's "state" for purposes of this analysis.  Therefore, because Bellator presents no conflict between Nevada and Illinois this factor also weighs in favor of the Court exercising jurisdiction.

### iii.      Forum State's Interest

Nevada has an interest in adjudicating claims allegedly involving tortious conduct against one of its companies.  Furthermore, because the alleged tortious conduct in this case was directed at a company involved in the MMA entertainment industry, an industry that Nevada has actively promoted since its inception, Nevada's interest is more compelling.  Therefore, this factor weighs in favor of a  jurisdiction in Nevada.

AO 72
(Rev. 8/82)

1    Having analyzed the forgoing factors, the Court finds that Bellator has not met its

2    burden in showing that the exercise of jurisdiction is unreasonable.  As such, the Court finds that

3    the "minimum contacts" requirement of *International Shoe* is satisfied and the Court has specific

4    jurisdiction over Bellator.

5               **B.    Fairness**

6    Once a court decides that the nonresident defendant has sufficient minimum

7    contacts with the forum, "these contacts may be considered in light of other factors to determine

8    whether the assertion of personal jurisdiction would comport with 'fair play and substantial

9    justice.'"  *Burger King Corp.*, 471 U.S. at 476.  When considering the issue of fairness, the Ninth

10   Circuit examines the same "Reasonableness" factors previously discussed (*see* Section

11   (I)(A)(2)(C) of this order).  Because the Court has already considered those factors in its minimum

12   contacts analysis, it is unnecessary to reconsider them here.  Thus, the Court finds that both the

13   "minimum contacts" and "fairness" requirements of *International Shoe* are satisfied, and denies

14   Bellator's motion to dismiss for lack of personal jurisdiction.

15                          **CONCLUSION**

16   Accordingly, and for good cause appearing,

17   IT IS HEREBY ORDERED that Bellator's Motion to Dismiss (#8) is DENIED.

18   Dated: January 24, 2011

19

20   _____

21   **ROGER L. HUNT**
     **Chief United States District Judge**

22

23

24

25

26

AO 72
(Rev. 8/82)